IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GINO BASSETT SR.,**  **Plaintiff,**  v.  **NURSE PRACTITIONER DEARMOND, NURSE PRACTITIONER KRANE, NURSE PRACTITIONER MOLDENHAUER, NURSE LIZ, NURSE REEVA, DR. PATEL, and UIC CHRONIC DISEASE CONTROL,**  **Defendants.** | Case No. 24-cv-1063-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Gino Bassett Sr., an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Bassett alleges that the defendants were deliberately indifferent to numerous medical conditions in violation of the Eighth Amendment. He also alleges a claim of retaliation in violation of the First Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## THE COMPLAINT

In his Complaint, Bassett makes the following allegations: Bassett suffers from a number of physical and mental conditions. Upon his arrival at Menard Correctional Center in July 2023, he began complaining of clogged thyroid glands, an infection in his throat, severe chest pain, breathing issues, swollen testicles and scrotum, and blood in his urine (*Id*. at pp. 10-11). On August 1, 2023, he spoke with Nurse Practitioner ("NP") Moldenhauer about his symptoms, but Moldenhauer merely told Bassett not to worry and assured him that the symptoms would go away on their own (*Id*. at p. 11). Although Moldenhauer prescribed a mouthwash solution for his throat, Bassett never received the medication (*Id*.).

On August 15, 2023, Bassett had a follow-up appointment with NP Dearmond and again complained about his conditions, noting that he had a history of serious medical issues (*Id*.). He discussed the issues with her and informed her that he needed treatment, surgery, and medications to treat his conditions (*Id*.). Dearmond did not examine Bassett and said that she would review the medical files Bassett brought with him to the appointment (*Id*.). Despite complaining of severe chest pain, breathing issues, a rash and sores all over his body, and bleeding from his penis, Dearmond failed to provide him with a referral or any additional care (*Id*.). Since being incarcerated at Menard, Bassett has not received any requested treatment, examination, referrals, or surgery (*Id*.). After the appointment, he wrote additional notes to Dearmond asking for care, medication,

and specific creams, but she failed to respond or call Bassett for another appointment (*Id*.).

From September through October 2023, Bassett was placed in a cell without water or a toilet and was denied medical treatment and his medications. Bassett later alleges he was placed on crisis watch due to a mental breakdown caused by the death of his son in a car accident (*Id*. at p. 18). Correctional Officer Kulick and other unknown officers also denied Bassett his food tray for five days (*Id*. at p. 12).[1] They also denied him access to mental health care and medications, telling the nurses not to give Basset his medication, food tray, or mail (*Id*.). He alleges that he suffered from chest pains, vomiting, bleeding from his penis, hallucinations, delusional behavior, anxiety, suicidal thoughts, and swollen thyroid glands (*Id*. at p. 18). One nurse finally realized Bassett's need for care and sent him to the healthcare unit on October 2, 2023 (*Id*.). But NP Dearmond refused to treat him because Bassett had previously written grievances about her (*Id*. at pp. 12-13). He was sent back to a crisis/suicide watch cell and his condition deteriorated (*Id*.).

Bassett continued to plead for help from mental health staff. Finally, mental health staff member Bayer reported Bassett's condition to NP Moldenhauer. After examining Bassett and reviewing his lab results, Moldenhauer transported Bassett to St. Louis University Hospital for life threatening conditions, including both medical and mental issues (Doc. 1, p. 13, 18). Bassett's lab results from the hospital showed that his HIV and

---

[1] Bassett fails to identify these individuals as defendants in the case caption nor does he indicate that he seeks to bring claims against them for his treatment on crisis watch.

3

Hepatitis C ("Hep C") levels were off because he was not receiving needed medications. His syphilis levels were dangerously high because he did not receive the required treatment every six months (*Id.* at p. 14). He had issues with his asthma due to lacking an inhaler since arriving at Menard (*Id.*). He was diagnosed with a crooked eye lens requiring surgery due to lack of examinations or referrals to an eye doctor (*Id.*). He had an infection in his scrotum and penis, an infection in his throat, swollen thyroid glands, a rash, latent TB, and chest pains (*Id.*). Bassett alleges that officials at Menard failed to provide him with any care for these conditions, causing him to be hospitalized due to his poor health.

On October 14, 2023, Bassett was discharged from the hospital (*Id.*). Despite being prescribed medications for his HIV and Hep C while hospitalized, Bassett did not receive the prescriptions at Menard (*Id.* at 14-16). Bassett alleges that doctors at the hospital informed Bassett he had to take the medications, or he would die (*Id.*). Although he wrote grievances about his lack of care, NP Dearmond refused to provide a response to the counselor (*Id.* at p. 15-16). Neither Dearmond nor Moldenhauer submitted an order for his medications after his release from the hospital (*Id.*).

On November 10, 2023, Bassett spoke to a psychologist and she inquired about his access to his medications (*Id.* at p. 16). She informed Bassett that he was supposed to receive the medications until November 15, 2023, but he failed to receive any prescriptions after his release from the hospital. Bassett's counselor also informed him that the healthcare unit was disregarding Bassett's need for his medications (*Id.*). Bassett continues to suffer from numerous conditions but NPs Moldenhauer, Dearmond, and

4

Krane refuse to provide him with proper treatment (*Id.* at p. 17). Bassett believes that Moldenhauer, Dearmond, and Krane are retaliating against him for writing grievances about his medical care (*Id.*). He alleges that he was recently hospitalized for the same complained of conditions because he has not received proper medications, including his psych and blood pressure medications, as well as medications for seizures, asthma, Hep C, and HIV (*Id.* at p. 18).

In addition to medical staff at Menard denying him care, Bassett alleges that Dr. Patel from UIC Disease Control refused to provide him care when he was at Stateville Correctional Center (*Id.* at p. 17). Although he was eligible to receive medication for his Hep C, Dr. Patel denied Bassett access to treatment, noting that Bassett was not ready for treatment (*Id.*). Bassett believes that he was eligible because he received the required testing at the prison. Dr. Patel refused to treat Basset with the proper medications for over three years (*Id.*).

## PRELIMINARY DISMISSALS

Although Bassett refers to a Nurse Liz and Nurse Reva in the case caption, he fails to include any allegations against them in his statement of claim. There are simply no allegations suggesting that they treated Bassett or were deliberately indifferent to his need for care. Thus, any claim against Nurse Liz and Nurse Reva is **DISMISSED without prejudice**.

Bassett also identifies Dr. Patel, a doctor at UIC Chronic Disease Control, as a defendant. First, it appears that Dr. Patel is a private physician not affiliated with the Illinois Department of Corrections. Section 1983 liability is only proper against those

5

officials who are "state actors" and not all private physicians are state actors. *See Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 797-98 (7th Cir. 2014). The Complaint lacks allegations suggesting Dr. Patel was acting under color of state law when he treated Bassett. Further, Bassett alleges that Dr. Patel's treatment took place while Bassett was at Stateville Correctional Center. Thus, venue for a claim against Dr. Patel would most likely be proper in the Northern District of Illinois where Bassett's treatment occurred. *See* 28 U.S.C. § 93(a); 28 U.S.C. § 1391(b). To the extent that Bassett seeks to raise a claim against Dr. Patel, or any other defendant, for care he received while at Stateville, Pontiac, or Dixon, he would have to file a case in the appropriate venue for the care received at those prisons.[2] Venue is not proper here for those potential claims because the care at issue did not occur within this judicial district. Thus, the claim against Dr. Patel and any potential claim for care received at Stateville, Pontiac, and Dixon are **DISMISSED without prejudice**.

Bassett also identifies NP Krane as a defendant, but states only in conclusory fashion that she has refused him treatment and retaliated against him since his arrival at Menard (Doc. 1, p. 17). He fails, however, to include any allegations indicating when he saw Krane, what care he sought from her, and what care, if any, she provided. A successful complaint generally alleges "the who, what, when, where, and how…" *See*

---

[2] Bassett also refers to improper care that he received while incarcerated at Dixon and Pontiac, but fails to include any factual allegations about the care he received at those prisons. He fails to indicate what dates he was housed at the prisons, from whom he sought care, or what care, if any, he was provided while incarcerated at Dixon and Pontiac.

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Bassett's Complaint lacks pertinent factual allegations regarding the care he received from Krane. Thus, any claim against Krane is **DISMISSED without prejudice**.

### DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against NP Moldenhauer and NP Dearmond for failing to treat Bassett's medical conditions.
>
> **Count 2:** First Amendment retaliation claim against NP Moldenahuer and NP Dearmond for failing to treat Bassett's medical conditions in retaliation for Bassett filing grievances against them.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

**Count 1**

At this stage, Bassett states a viable claim against NP Moldenhauer and NP Dearmond for their deliberate indifference to his various medical conditions. To state a viable claim, a plaintiff must allege facts suggesting that (1) he "suffered from an

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

7

objectively serious medical condition", and (2) the defendants acted with deliberate indifference to his medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). Bassett lists a litany of medical conditions that he suffers from, including HIV, Hep C, issues with his throat and thyroid glands, blood in his urine, sores and rashes, syphilis, and asthma. He alleges that he sought care from both nurse practitioners on numerous occasions, but they refused to provide him with any care. After returning from St. Louis University Hospital with prescriptions for HIV and Hep C medications, both Moldenhauer and Dearmond refused to provide him with his prescribed medications. Thus, Bassett adequately alleges a claim of deliberate indifference to his serious medical needs.

**Count 2**

As to his claim in Count 2, "First Amendment retaliation cases require the [plaintiff] to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Id.* (citation omitted). At this stage, Bassett adequately alleges that NP Dearmond retaliated against him. He alleges that on October 2, 2023, she told him she would not treat him because he wrote a grievance about her that she believed was untrue (Doc. 1, pp. 12-13).

But Bassett fails to state a retaliation claim against NP Moldenhauer. He states only in conclusory fashion that Moldenhauer refused to treat him in retaliation for writing grievances about his care (*Id*. at p. 17). But he fails to allege that Moldenhauer was aware

8

of the grievances or that the grievances were a motivating factor in the alleged denial of care. Thus, the retaliation claim against Moldenhauer is **DISMISSED without prejudice**.

### DISPOSITION

For the reasons stated above, Count 1 shall proceed against NP Moldenhauer and NP Dearmond. Count 2 shall proceed against NP Dearmond but is **DISMISSED without prejudice** as to NP Moldenhauer. All other potential claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants NP Moldenhauer and NP Dearmond: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Bassett. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Bassett, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Bassett's claims are related to his mental and physical health, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

If judgment is rendered against Bassett, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Bassett is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 6, 2024.**

*/s/ Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**