IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GINO BASSETT SR.,** | |
| Plaintiff, | |
| v. | Case No. 24-cv-1063-SPM |
| **ALISA DEARMOND and MICHAEL MOLDENHAUER,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiff Gino Bassett Sr., an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is before the Court on several motions filed by Bassett. Bassett filed a motion for preliminary injunction (Doc. 47). Defendants filed a response (Doc. 48) in opposition to the motion and Bassett filed a reply brief (Doc. 52). Bassett filed a supplement of medical records (Doc. 53) and Defendants submitted additional medical records (Doc. 57). The Court requested and received additional medical records that were initially missing from Defendants' initial response (Doc. 63-1). Bassett later filed a motion for temporary restraining order (Doc. 60) and a motion to change the venue in this case (Doc. 59). Defendants filed a combined response to the motions (Doc. 61).

## BACKGROUND

Bassett's Complaint alleged that Defendants were deliberately indifferent to his serious medical conditions and retaliated against him for complaining about their care. Specifically, Bassett alleged that he suffered from a number of conditions upon arriving at Menard, including clogged thyroid glands, a throat infection, chest pain, breathing issues, swollen testicles, and blood in his urine (Doc. 14, p. 2). On August 1, 2023, Bassett initially sought care from Nurse Practitioner ("NP") Michael Moldenhauer, but he told Bassett that his symptoms would go away on their own (*Id.*). Bassett acknowledged that Moldenhauer prescribed a mouthwash for his throat, but he alleged that he never received the medication (*Id.*).

Approximately two weeks later, on August 15, 2023, Bassett had another appointment with NP Alisa Dearmond (*Id.*). He again complained of his numerous conditions and stated that he needed treatment, surgery, and medications (*Id.*). But Bassett alleged that Dearmond failed to examine him, nor would she provide him with a referral for medical care (*Id.*). She stated that she would review the medical files that Bassett brought with him to the appointment (*Id.*).

On October 2, 2023, while on crisis watch, a nurse sent him to the healthcare unit because he was suffering from chest pains, vomiting, hallucinations, delusional behavior, anxiety, suicidal thoughts, and swollen glands (*Id.* at p. 3). But Dearmond refused to treat him because of his previous grievances about her care (*Id.*). His condition deteriorated (*Id.*). Mental health staff eventually reported his condition to Moldenhauer who transferred Bassett to St. Louis University Hospital for what Bassett alleged was a life-

threatening condition (*Id*.). His HIV and Hepatitis C levels were off because he was not receiving his medications, and his syphilis levels were dangerously high because he was denied the required treatment (*Id*. at pp. 3-4). Bassett alleged that he was also diagnosed with a crooked eye lens that required surgery (*Id*. at p. 4). He also had an infection in his scrotum and penis, an infection in his throat, swollen thyroid glands, a rash, latent TB, and chest pains (*Id*.).

On October 14, 2023, Bassett was discharged from the hospital. Although the hospital prescribed Bassett medications for his HIV and Hepatitis C, he did not receive those prescriptions upon his return to Menard (*Id*.). He wrote grievances, but Dearmond refused to provide a response to his grievances. Neither Dearmond nor Moldenhauer placed an order for his medications.

After conducting a review of Bassett's Complaint pursuant to 28 U.S.C. § 1915A, he was allowed to proceed on the following two counts:

> Count 1:    Eighth Amendment deliberate indifference claim against Moldenhauer and Dearmond for failing to treat Bassett's medical conditions.
>
> Count 2:    First Amendment retaliation claim against Dearmond for failing to treat Bassett's medical conditions in retaliation for Bassett filing grievances against her.

(Doc. 14, pp. 7-8).

**A. Motion for Preliminary Injunction**

On February 7, 2025, Bassett filed his motion for preliminary injunction (Doc. 47). Bassett argues that he is still suffering from medical conditions that remain untreated (*Id*. at p. 1). Bassett argues that he is blind in his right eye due to a crooked lens (*Id*.). As a

3

result, he suffers from burning, watery, irritated eyes (*Id*.). He also suffers from an untreated cataract in his left eye (*Id*.). Bassett notes that he was referred for eye surgery for both conditions in October 2020, but he was denied eye surgery at Menard. He continues to fill out requests to see the eye doctor, but his requests are routinely denied (*Id*.). Bassett notes that the eye doctor examined him on three occasions at Menard and referred him to an outside eye doctor, but Menard's eye doctor, Dr. Ryan, failed to schedule the referral or provide Bassett with eye drops (*Id*.).

In addition to the issue with his eyes, Bassett complains that he still suffers from swollen glands that affect his eating and swallowing (Doc. 47, p. 1). He has a white fungus in his mouth that also affects his ability to eat. The swollen glands also affect his hearing (*Id*.). Despite his requests for surgery, he has been denied care or a referral for surgery (*Id*.). Bassett alleges that on October 11, 2024, an emergency room doctor referred him to an ENT for surgery for his swollen glands (*Id*. at p. 2). He acknowledges seeing the ENT on November 21, 2024, but claims the ENT told him that he needed immediate surgery (*Id*.). He alleges that he was set for surgery but that both Dearmond and Moldenhauer denied the referral for surgery (*Id*.). He alleges that Dearmond and Moldenhauer refuse to refer him because of his pending lawsuits. He alleges that he is also being denied medications, although he fails to identify the medications that he has been prescribed (*Id*. at p. 3).

Defendants Moldenhauer and Dearmond filed a response in opposition to the motion. They argue that Bassett has not shown a likelihood of success on his motion because he has received medical care while at Menard Correctional Center (Doc. 48). They

4

point to numerous medical records detailing the care Bassett has received while at Menard.

### B. Medical Care for Swollen Neck

The attached medical records show that Bassett saw Moldenhauer on August 8, 2023 (Doc. 48-1, p. 1). Bassett complained of issues with his throat and swallowing, as well as a white film on his tongue (*Id*.). He was diagnosed with yeast issues, sinus drainage, and sinusitis (*Id*.). He was prescribed a Nystatin mouthwash and Augmentin (*Id*.). On August 22, 2023, Bassett had a follow-up appointment with Dearmond (*Id*. at p. 2). Bassett complained of numerous issues including possible thrush on his tongue. Dearmond noted that Bassett had a history of HIV and Hepatitis C. Bassett noted that he was supposed to have surgery on his right eye, but never had the surgery (*Id*.). He also complained of something in his throat that made it difficult to swallow (*Id*.). Dearmond prescribed several medications for his numerous conditions and set Bassett for a one-month follow-up (*Id*.). She also submitted a referral for a CT scan of his neck and a referral to an ENT (*Id*. at p. 13-15). Dearmond saw Bassett again on October 3, 2023 for his oral thrush and rash (*Id*. at p. 4). Dearmond noted that Bassett had been referred to the ENT but had not seen one as of the follow-up appointment (*Id*.). Bassett was directed to continue with his prescribed medications (*Id*.).

On October 10, 2023, Bassett presented to Moldenhauer complaining of difficulties swallowing (Doc. 48-1, p. 6). Moldenhauer noted that there was no improvement in his condition (*Id*.). He also noted that Bassett refused to hake his HIV medications and noted that Bassett's complaints of enlarged and painful testicles could be a sign of progression

5

of the disease (*Id*.). Moldenhauer sent him to St. Louis University ("SLU") emergency room (*Id*.). Upon his return from SLU, Moldenhauer admitted Bassett to the prison infirmary in order to finalize his plan of care (*Id*. at pp. 7-11). On October 15, 2023, Moldenahuer spoke with Bassett and noted that he still had a white coating on his tongue (*Id*. at p. 10). Moldenhauer continued with the course of medications prescribed by SLU (*Id*.). On October 16, 2023, Bassett was released from the infirmary but referred to the HIV high risk clinic (*Id*. at p. 11). Labs were also ordered, and he was directed to continue with the prescribed mouthwash for his oral thrush (*Id*.). On October 19, 2023, an entry in Bassett's medical records noted that he was sent out for his previously scheduled CT scan (*Id*. at p. 12). The CT scan found no signs of any abnormalities of the nasopharynx, oropharynx, or larynx (*Id*. at p. 17). High density masses were found on both the right and left glands (*Id*.). Further tests were recommended including an ultrasound and MRI (*Id*.). In early November 2023, Dearmond placed urgent referral requests for an MRI, oncology consultation, endoscopy, and ultrasound (Doc. 63-1, pp. 19-22).

On November 17, 2023, Bassett had an MRI of his neck (Doc. 63-1, p. 23). His lymph nodes were mildly enlarged, and multiple bilateral parotid lesions were noted (*Id*.). His artery flow was normal as was his tongue and airways (*Id*.). It was noted that the lesions were likely hemorrhagic/proteinaceous and benign (*Id*. at p. 24). Oncology reviewed the MRI and noted that the lesions appeared to be non-malignant lesions better handled by an ENT (*Id*. at p. 25). They recommended referral to an ENT but noted that no biopsy was needed (*Id*.). On November 22, 2023, Dearmond noted that Bassett already had a referral

to the ENT (*Id.*). On December 1, 2023, Bassett had an ultrasound of his neck which again noted the nodules (*Id.* at p. 26).

More recently, Bassett again presented to the healthcare unit complaining of swollen glands. On October 7, 2024, Bassett complained to a nurse of pain in his left neck and right wrist (Doc. 57-1, p. 1). The nurse noted that he had enlarged nodules on the left side of his neck (*Id.*). Bassett denied having a sore throat or difficulty swallowing (*Id.*). The nurse referred Bassett to the doctor (*Id.*). On October 10, 2024, the healthcare staff attempted to see Bassett in the healthcare unit but he never arrived (*Id.* at p. 4). On October 11, 2024, Moldenhauer saw Bassett for his swollen glands (*Id.* at p. 2). Bassett noted that the nodules on his neck were getting bigger (*Id.* at p. 3). Moldenhauer noted that both Bassett's right and left lymph nodes in his neck were enlarged and painful to the touch (*Id.* at p. 2). His pharynx and nasal passages were within normal limits and there were no issues with his airway (*Id.*). Moldenhauer consulted with Dr. Butalid and Bassett was transferred to SLU Hospital Emergency Room (*Id.* at p. 2).

The emergency department at SLU performed a CT and MRI of Bassett's neck, both without contrast (Doc. 57-1, p. 9). They diagnosed Bassett with a mass on his parotid gland (*Id.*). He was prescribed ibuprofen and referred to an ENT (*Id.* at pp. 6-8). On October 12, 2024, Moldenhauer submitted an urgent referral (*Id.* at pp. 9, 14). On October 16, 2024, the referral was approved (*Id.* at p. 15). Bassett was scheduled for an appointment with the ENT on November 21, 2024 (*Id.* at p. 23). Prior to his appointment with the ENT, Bassett was again examined by Moldenhauer (*Id.* at p. 16). On October 31, 2024, Moldenhauer evaluated Bassett at his cell (*Id.*). The glands were still swollen and

soft to the touch (*Id*.). There were no difficulties with his airway and his voice was clear (*Id*). There was also no sign of fungus on his tongue (*Id*.). Moldenhauer referred Bassett to the doctor for a follow-up (*Id*.).

On November 4, 2024, Bassett saw a doctor at Menard (Doc. 57-1, pp. 18-19). The doctor noted that Bassett had chronic bilateral parotid infections and was on chronic Bactrim DS for the condition (*Id*.). He further noted that Bassett was scheduled with the ENT (*Id*.). On November 21, 2024, Bassett saw Dr. Hentzelman at SLU Otolaryngology (ENT) specialty clinic for recurrent facial swelling (*Id*. at pp. 23-53). Bassett informed the doctor that he suffered from swollen parotid glands, had multiple previous procedures for the issue, and noted that a number of his family members suffered from the condition (*Id*. at p. 24). Dr. Hentzelman noted that Bassett was alert, well nourished, with no signs of acute distress (*Id*. at p. 27). He noted bilateral soft tail of parotid lesions about 2 cm (*Id*.). Dr. Hentzelman reviewed the previous CT and MRI images and noted right and left parotid masses of 4 cm each (*Id*. at pp. 28-31). He noted that the left mass was larger compared to a previous CT scan in 2023 (*Id*. at pp. 28, 32). He did note multiple small lymph nodes on both sides of the neck but no evidence of cervical lymphadenopathy (*Id*. at p. 29). The arteries and muscles in the neck appeared normal (*Id*.). Dr. Hentzelman noted that his condition was compatible with lymphoepithelial cysts associated with HIV. He further noted that it was less likely to be Warthin's tumor or pleomorphic adenoma (*Id*. at p. 32). Dr. Hentzelman recommended a follow-up with an infectious disease specialist and with the ENT (*Id*.). He noted that they may consider watchful waiting, additional medications, ultrasound-guided fine needle aspiration, or ultimately

8

surgery (*Id.*). Bassett informed Dr. Hentzelman that he favored the surgical route if medically indicated (*Id.*).

Bassett has had follow-ups with the high risk HIV clinic through telemedicine visits, as recently as January 15, 2025 (*Id.* at p. 54-55).

### C. Eye Care

As to Bassett's complaints regarding his eyes, the medical records reflect that he appeared for an eye exam on December 4, 2023 (Doc. 63-1, p. 27). Dr. Ryan Sutterer noted that Bassett had previous trauma to his right eye causing a displaced intraocular lens and a cataract in his left eye (*Id.*). He was referred to Quantum Vision for a review of the two conditions and "for possible surgery" to remove and replace the displaced lens (*Id.* at p. 28). On February 5, 2024, Bassett had another exam (*Id.* at p. 29). It was again noted that he needed a referral for special services (*Id.*). On October 16, 2024, Dr. Sutterer again referred Bassett to an ophthalmologist at Quantum Vision for a dislocated intraocular lens in his right eye (Doc. 57-1, p. 56). Dr. Sutterer labeled the referral as non-urgent. The referral was approved, and Bassett was scheduled for an appointment for February 14, 2025 (*Id.* at pp. 57-59, 61).

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of

the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

### A. Motion for Preliminary Injunction

Bassett fails to demonstrate that he is entitled to the injunctive relief he seeks because he fails to demonstrate that he is likely to succeed on the merits of his claims.

10

Although he alleges that both Moldenhauer and Dearmond have acted with deliberate indifference to his need for medical care for his various conditions, the medical records reflect that he is receiving care. The medical records demonstrate that he has been seen by both Moldenhauer and Dearmond on several occasions. Further, he was sent to the emergency room on two occasions and received follow-up tests and care after each of those visits. He also recently had follow-ups with the high risk HIV Clinic which is consistent with the ENT's recommendation that Bassett follow-up with a infectious disease specialist (Doc. 57-1, pp. 32, 54-55).

    Despite Bassett's insistence that he was told he needed immediate surgery by both emergency room doctors and the ENT, the records do not support his contention. The emergency room doctors referred Bassett to an ENT and Moldenhauer put in an urgent referral to an ENT (Doc. 57-1, p. 14). Further, the ENT's report does not suggest surgery. Dr. Hentzelman noted that he believed the cysts were related to Bassett's HIV and due to intermittent control of the disease. He recommended continued follow-ups with his primary provider, infectious disease, and the ENT (*Id*. at p. 32). He instructed Bassett to bring his previous treatment records to his next visit and noted that depending on how his symptoms progressed he may recommend watchful waiting, additional medications, ultrasound-guided fine needle aspiration, sclerotherapy, "or ultimately a surgery such as unilateral or bilateral superficial parotidectomy" (*Id*. at p. 32). The records do not reflect an immediate referral for surgery. Although the records reflect that Bassett informed Dr. Hentzelman that he favored surgery if indicated, nothing in the records reflect that any doctor has informed Bassett that surgery is medically indicated at this time (*Id*.). His mere

11

disagreement with the current course of treatment also does not amount to deliberate indifference. *See Edward v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [an inmate] is not entitled to demand specific care.").

In a supplement to his motion, Bassett tries to support his contention that he needs surgery by pointing to several medical records from 2021 and 2022. An office visit from UI Hospital on August 3, 2022 notes that during an April 2022 ultrasound a deep vein thrombosis ("DVT") was found in his left jugular vein (Doc. 53, p. 3). But the doctor noted that there was no indication that further treatment was warranted because, "if even still present", the DVT was considered chronic, and Bassett did not display symptoms (*Id*.). The records also note that he had previous needle aspirations of his thyroid cysts (*Id*.). But Dr. Hentzelman acknowledged those previous findings, noting that Bassett had multiple previous parotid procedures including needle aspiration that was complicated by vein thrombosis (Doc. 57-1, p. 33). Further, the CT scan of Bassett's neck noted that his jugular veins appeared normal (*Id*. at p. 29). Nothing in the current medical records demonstrate a need for immediate surgery. Thus, Bassett has not demonstrated that he is entitled to injunctive relief for his neck glands.

As to Bassett's eye condition, it also appears that he is receiving medical care. Recent medical records note that he was referred to an outside ophthalmologist for treatment. He was scheduled to be seen on February 14, 2025 (Doc. 57-1, p. 61). Further, there is no evidence to suggest that Moldenhauer or Dearmond are involved in Bassett's eye care, nor have they displayed deliberate indifference to his eye care needs. Bassett

12

notes that "Dr. Ryan" has ignored his requests for eye surgery (Doc. 47, p. 1). Although Dr. Ryan Sutterer appears to be Bassett's treating eye doctor at Menard, Dr. Sutterer is not a defendant in this case. To the extent that Bassett alleges that Dr. Sutterer has been deliberately indifferent to his need for eye surgery, Bassett would have to file a new lawsuit against Dr. Sutterer. There is simply no evidence in the record to indicate that Moldenhauer or Dearmond have been deliberately indifferent in treating Bassett's eye conditions. Thus, Bassett's request for a preliminary injunction is **DENIED**.

### B. Motion for Temporary Restraining Order

Bassett recently filed another request for injunctive relief (Doc. 60). In his motion for temporary restraining order, Bassett argues that his safety and security are at risk. He notes that employees at Menard inappropriately hold his outgoing and incoming mail (Doc. 60, p. 1). He notes that Nurse Hephner and Nurse Liz spread false rumors about him and withhold his refills from the pharmacy in retaliation for his grievances and lawsuits (*Id.*). Hephner also allegedly announced his Hepatitis C and HIV status to other inmates on his gallery (*Id.*). He further alleges that grievance officers refuse to send his legal mail and delay his grievances (*Id.*). Bassett further alleges that C/O Hemper, C/O Kulick, and Lt. Walker have threatened him and retaliated against him (*Id.* at p. 3). Bassett requests to be transferred from Menard to a facility where he will not be retaliated against and receive mental and medical care (*Id.*).

Bassett also notes that the water recently stopped working in his cell (*Id.* at p. 4). Although he complained to C/O James and requested help with his water, Bassett alleges that James ignored his request (*Id.*). Bassett alleges that he went several days without

13

water, and suffered from dehydration and the inability to brush his teeth (*Id.*). Although Bassett alleges that the water was eventually repaired, the water pressure caused the line to burst and flood his cell (*Id.*).

Bassett's allegations in his new motion, however, are not against any of the defendants in this case. Bassett only points to non-party staff members, including numerous correctional officers, as well as nurses who were previously dismissed from this case. His allegations in his motion are also unrelated to the claims in his lawsuit. Although the claims in this case involve medical treatment he received from Moldenhauer and Dearmond for various conditions, Bassett's motion alleges numerous potential violations including his treatment for HIV and Hepatitis C, his access to water while housed in a particular cell, his ability to access specific prescriptions, and his ability to send and receive mail. These allegations are unrelated to his current lawsuit. To the extent that he wishes to seek relief for these new allegations, Bassett would have to file a new lawsuit on these claims after first exhausting his administrative remedies. His request for injunctive relief in this case for these unrelated claims is **DENIED**.

### C. Motion for Change of Venue

In addition to his requests for injunctive relief, Bassett also recently filed a motion for change of venue (Doc. 59). Bassett indicates that he believes the undersigned favors the defendants. Bassett also takes issue with the Court's denial of his request for the assignment of counsel. But Bassett fails to provide any basis for his requested change of venue. Venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b). According to that statute, such actions may be brought only in (1)

the judicial district where any defendant resides (if all defendants reside in the same State), (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action, if there is no district in which the action may otherwise be brought. The events giving rise to Bassett's claims occurred at Menard which is located in this district. Venue is proper in this district.

Instead of a change of venue, Bassett appears to be arguing for the disqualification of the undersigned. 28 U.S.C. § 455(a) requires a judge to disqualify himself when "his impartiality might reasonably be questioned." This includes, among other things, when a judge "has a personal bias or prejudice concerning a party."28 U.S.C. § 455(b). "Bias must be proven by compelling evidence, and it must be grounded in some form of personal animus that the judge harbors against the litigant." *United States v. Barr*, 960 F.3d 906, 920 (7th Cir. 2020). But this Court does not have a personal bias towards Bassett nor has Bassett pointed to such a bias. Instead, Bassett merely takes issue with the Court's prior rulings, specifically the denial of his request for counsel. Mere dissatisfaction with a court's ruling, however, does not constitute bias nor is it the basis for a recusal. *Liteky v. United States*, 510 U.S. 540, 548 (1994); *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996). Because Bassett only takes issue with the Court's prior orders in this case, he fails to offer an appropriate basis for recusal. Thus, his request for change of venue is **DENIED**.

## Conclusion

For the reasons stated above, Bassett's motions for injunctive relief (Docs. 47 and 60) are **DENIED**. Bassett's motion for change of venue (Doc. 49) is also **DENIED**.

15

**IT IS SO ORDERED.**
**DATED: April 22, 2025.**

            */s/ Stephen P. McGlynn*
            **STEPHEN P. MCGLYNN**
            **U.S. District Judge**