IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GINO BASSETT SR.,

    Plaintiff,

v.

ALISA DEARMOND and MICHAEL
MOLDENHAUER,

    Defendants.

Case No. 24-cv-1063-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Gino Bassett Sr., an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on a motion for summary judgment filed by Defendants Alisa Dearmond and Michael Moldenhauer (Docs. 36, 37). Defendants argue that Bassett failed to exhaust his administrative remedies before filing his lawsuit. Bassett filed a response (Doc. 49) and Defendants filed a reply (Doc. 52).[1]

---

[1] After Defendants filed their reply brief, Bassett filed another response entitled "motion objecting to summary judgment of Defendants" (Doc. 51). Bassett makes the same arguments as he raised in his response brief, arguing that he never received discovery relevant to the issue of exhaustion.

1

#### BACKGROUND

On April 9, 2024, Bassett filed his Complaint (Doc. 1) against Dearmond and Moldenhauer for their failure to provide him with medical treatment for his various medical conditions. Specifically, upon arriving at Menard in July 2023, Bassett complained to medical staff about various issues including clogged thyroid glands, a throat infection, severe chest pain, breathing issues, swollen testicles and scrotum, and blood in his urine (Doc. 14, p. 2). On August 1, 2023, he spoke to Nurse Practitioner Moldenhauer about his symptoms, but Moldenhauer stated that the symptoms would go away on their own. He did prescribe a mouthwash for Bassett's throat, but Bassett never received the medication (*Id.*). On August 15, 2023, Bassett had a follow-up appointment with Nurse Practitioner Dearmond about his various conditions. He indicated that he needed treatment, surgery, and medications for his conditions (*Id.*). Dearmond did not examine Bassett but told him that she would review his medical files (*Id.*). Bassett maintained that he never received any of his requested treatments or referrals (*Id.*). After the appointment, he wrote notes to Dearmond asking for medication and specific creams, but she failed to respond to the requests (*Id.* at pp. 2-3).

Throughout September and October 2023, correctional officers denied Bassett medical treatment and access to his medications (Doc. 14, p. 3). Bassett was on crisis watch after the death of his son and his mental health continued to deteriorate. On October 2, 2023, a nurse sent Bassett to the healthcare unit where he was again seen by Dearmond (*Id.*). But she refused him treatment because of a previous grievance Bassett wrote about her care (*Id.*). She sent him back to his crisis cell. Bassett continued to plead

2

with mental health staff for medical care (*Id.*). They finally reported his condition to Moldenhauer, who examined Bassett and reviewed labs. In response to the lab results, Moldenhauer transported Bassett to St. Louis University Hospital for mental and medical care (*Id.*). The labs at the hospital showed that his HIV and Hepatitis C levels were not within range because he was not receiving his medications (*Id.* at pp. 3-4). His syphilis levels were dangerously high due to lack of treatment (*Id.* at p. 4). He also had issues with his asthma because he lacked access to his inhaler at Menard (*Id.*). He was diagnosed with a crooked eye lens that required surgery (*Id.*). He was also diagnosed with an infection in his scrotum and penis, a throat infection, swollen thyroid glands, latent TB, and chest pains (*Id.*).

On October 14, 2022, Bassett returned to Menard with prescription medications for his HIV and Hep C, but Bassett did not receive those medications after his return (Doc. 14, p. 4). He wrote grievances about his medical care, but Dearmond refused to provide a response to the counselor. Neither Dearmond nor Moldenhauer sought to obtain his prescribed medications for him (*Id.*). On November 10, 2023, Bassett informed his psychologist that he lacked access to his medications. At the time he filed his Complaint, Bassett alleged that he still suffered from lack of medical care and that Moldenhauer and Dearmond refused to treat his various conditions (*Id.* at pp. 4-5).

After a review of his Complaint pursuant to 28 U.S.C. § 1915A, Bassett was allowed to proceed on the following two counts:

> Count 1: Eighth Amendment deliberate indifference claim against Moldenhauer and Dearmond for failing to treat Bassett's medical conditions.

> Count 2: First Amendment retaliation claim against Dearmond for failing to treat Bassett's medical conditions in retaliation for Bassett filing grievances against her.

(Doc. 14, p. 7).

### A. Summary Judgment Motion

Defendants Moldenhauer and Dearmond filed a motion for summary judgment, arguing that Bassett failed to fully exhaust his administrative remedies prior to filing his lawsuit. They identified numerous grievances in the record that Bassett filed regarding his medical care after his arrival at Menard.

> **August 15, 2023 Grievance (#K4-1023-1031):** Bassett's August 15 grievance complained that he saw Moldenhauer on August 1, 2023 for swollen thyroid glands that prevented him from eating or swallowing (Doc. 37-2, p. 69). He also complained of chest pains, but Moldenhauer failed to provide care other than ordering a mouth swish for his throat which Bassett never received (*Id*.). On August 15, 2023, Bassett met with Dearmond for the same issues, and she promised to review his medical history (*Id*.). He complained of his swollen thyroid glands, chest pain, swollen testicles, and breathing problems due to never receiving his asthma pump (*Id*. at pp. 69-70). Bassett stated that Dearmond refused to treat him for his issues, and he never received any pain medication or his medical swish for his throat (*Id*. at p. 70).
> 
> Although the grievance is dated August 15, 2023, Bassett noted that two months had gone by since his appointment with Dearmond and his issues were worse and his sick call slips ignored (Doc. 37-2, p. 70). Bassett complained that Dearmond continued to ignore his letters, request slips, and medication refill requests (*Id*.). He claimed Dearmond was rude and unprofessional. He noted that he was hospitalized on September 11, 2023 for his swollen thyroid glands. He further noted that he was hospitalized from October 11, 2023 until October 15, 2023 (*Id*.).
> 
> On October 26, 2023, the counselor received Bassett's grievance and the grievance was referred to the healthcare unit for a response (Doc. 37-2, p. 69). On February 28, 2024, Healthcare Unit Administrator Angela Crain submitted a response to the counselor (*Id*. at p. 71). Crain noted that Moldenhauer examined Bassett on both August 8, 2023 and October 10, 2023 (*Id*.). On August 22, 2023, Dearmond saw Bassett (*Id*.). Bassett was prescribed medications to treat his conditions, and his asthma inhaler was

4

refilled on July 17, 2023, October 11, 2023, November 29, 2023, and December 26, 2023 (*Id*.). Specifically, referrals were also submitted but Bassett refused those referrals in order to be eligible for a transfer because a medical hold would be placed on Bassett if he kept the medical appointments (*Id*.). On March 5, 2024, the counselor returned the grievance with Crain's response (*Id*. at p. 69; Doc. 37-5, p. 3). There are no entries in the cumulative counseling summary that would suggest the grievance was received by the grievance officer, nor did the Administrative Review Board ("ARB") receive this grievance (Doc. 37-5, Doc. 37-1). Further, the grievance log indicates that the grievance was never received for a second level review at the grievance office (Doc. 37-2, pp. 10-12).[2]

**September 12, 2023 Grievance (#K4-0923-0321):** Bassett submitted another grievance regarding the care provided by Dearmond on September 12 (Doc. 37-2, pp. 75-76). Bassett complained that he signed refusals for medical appointments with a doctor for his eyes and thyroid gland and submitted those refusals to Dearmond (*Id*. at p. 75). Although he allegedly needs two surgeries, he signed the refusals in order to obtain a lift on his medical hold, but Bassett alleged that Dearmond refused to lift the medical hold (*Id*.). He also signed a refusal for his psychiatric medication to be crushed and floated, but Dearmond still refused to change his prescription back to pill form (*Id*.). Bassett indicated that he recently saw Dearmond and stated that he would pass on any scheduled appointments with specialists in order to have his medical hold lifted in hopes of transferring to another prison (*Id*. at p. 76).

On September 19, 2023, the counselor received the grievance and forwarded it to the healthcare unit for a response (Doc. 37-2, p. 75). On February 28, 2024, Angela Crain responded to the grievance, noting that Bassett signed a medical refusal form in the presence of Dearmond on December 21, 2023 (Doc. 37-3, p. 1). He refused all outside furloughs, appointments, and referrals (*Id*.). At that time, his medical hold was lifted (*Id*.). As to his request for his psychiatric medications to be issued in pill form, as opposed to crushed and floated, Crain noted those orders came from the psychiatrist and Bassett would have to follow up with the psychiatrist in order to seek a change in those orders (*Id*.). On March 5, 2024,

---

[2] Although Defendants indicate that they submitted a copy of Menard's grievance log, citing to Exhibit D, that exhibit is actually the cumulative counseling summary. The grievance log appears to be attached at Exhibits B1 and B2 (*See* Doc. 37-2, pp. 7-13; Doc. 37-3, pp. 50-54). But Defendants failed to provide any exhibits or affidavits explaining this log. In a footnote, Defendants contend that, per the grievance officer, receipt of a grievance by the grievance officer would be documented on the log (Doc. 37, p. 5 n. 2). However, Defendants failed to provide an affidavit from the grievance officer or any evidence to authenticate this purported statement.

the counselor returned the grievance to Bassett (Doc. 37-2, p. 75; Doc. 37-5, p. 3). There is no record of the grievance being received by either the grievance office or the ARB (Doc. 37-2, pp. 10-12; Doc. 37-1, p. 10).

**September 22, 2023 Grievance (#K4-0324-1395):** Bassett submitted a grievance indicating that on September 22, 2023 he was placed in a cell with no running water or working toilet (Doc. 37-1, p. 20). He spoke with Officer Kulick every day and requested a crisis team, but Kulick refused the request (*Id*. at pp. 20-21). He was also denied a food tray on several days from September 22, 2023 through September 27, 2023 (*Id*. at p. 21). He was denied access to his medications during the same time period (*Id*.). On October 10, 2023, he was examined by Moldenhauer and sent to an outside hospital for care (*Id*.).

Although dated September 22, 2023, the grievance was not received by the Chief Administrative Officer ("CAO") until March 13, 2024 (Doc. 37-1, p. 20; Doc. 37-3, p. 50). On the second page of the grievance, Bassett wrote that this was a duplicate grievance as he previously submitted the grievance, but it was either lost or ignored (*Id*. at p. 21). On March 15, 2024 the CAO deemed the grievance an emergency and sent the grievance to the grievance officer (*Id*. at pp. 19-20). On March 18, 2024, the grievance officer found the grievance filed outside of the 60-day time period for submitting a grievance and recommended that the grievance be denied (*Id*. at p. 19). The CAO concurred with the determination (*Id*.). On March 20, 2024, Bassett marked the grievance for an appeal to the ARB (*Id*. at p. 19). On April 1, 2024, the ARB received Bassett's grievance (*Id*. at p. 18). The ARB also found the grievance untimely and returned the grievance without ruling on the merits of the claims (*Id*.).

**December 14, 2023 Grievance (#K4-1223-2205):** In December, Bassett submitted another grievance complaining about inadequate medical care (Doc. 37-3, pp. 15-16). Bassett complained that he signed his sixth medical refusal form in order to have his medical hold lifted (*Id*. at p. 16). Bassett noted that this was his third grievance on the issue, but Dearmond, Moldenhauer, and counselor Strong refused to respond to his previous grievances (*Id*.). He complained that both Dearmond and Moldenhauer refused to lift his medical hold, nor would they examine him or refill his medications (*Id*.). He was denied refills for his HIV and Hepatitis C medications (*Id*.). His urgent sick call requests were also ignored (*Id*.). Bassett identified earlier filed grievances, noting that he had yet to receive a response from the counselor in order to move to the next level (*Id*.). Bassett sought his medical hold lifted and Dearmond fired (*Id*. at p. 15).

Although marked as an emergency, the CAO denied the request to treat the grievance as an emergency (Doc. 37-3, p. 15). On January 2, 2024,

6

Counselor Strong received the grievance and responded that Bassett's medical hold was lifted on December 21, 2023 (*Id.*). On January 5, 2024, the grievance office received Bassett's grievance (*Id.* at p. 13). On February 7, 2025, the grievance officer recommended the grievance be deemed resolved because Bassett's medical hold had already been lifted (*Id.*). The CAO concurred with the finding (*Id.*). There is no record of the grievance with the ARB (Doc. 37-1).

**January 20, 2024 Grievance (#K4-0124-0505):** Bassett submitted a grievance complaining that numerous practitioners, including Dearmond, Moldenhauer, Krane, Reeva, and Nurse Liz refused to examine him, refer him for care, or provide him with medications (Doc. 37-3, p. 2). With the grievance, Bassett included a "statement of claim" identifying his numerous medical conditions and issues with medical care at Dixon, Pontiac, and Menard (*Id.* at pp. 4-11). He also discussed issues with his treatment from Moldenhauer and Dearmond from August through December 2023 (*Id.*).

Although marked as an emergency grievance, the CAO deemed the grievance not an emergency and submitted the grievance to the counselor (Doc. 37-3, p. 2). On January 30, 2024, the counselor received the grievance and submitted it to the healthcare unit for a response (*Id.*). On February 28, 2024, Angela Crain responded that the various complaints raised in his statement of claim were already addressed in numerous other grievances (*Id.* at p. 12). On March 5, 2024, the counselor returned the grievance to Bassett (*Id.* at p. 2; Doc. 37-5, p. 3). There is no record of the grievance being submitted to the grievance officer (Doc. 37-3, pp. 50-53) or the ARB (Doc. 37-1).

In addition to the grievances filed by Bassett specifically identifying Moldenhauer and Dearmond, Defendants identify several grievances that are unrelated to the claims in this lawsuit. These include a September 27, 2023 (#K4-1123-1666) grievance about Bassett's mental health care that only identified mental health professionals (Doc. 37-1, pp. 22-25), a November 14, 2023 (#K4-1123-1548) grievance about Nurse Liz's failure to provide Bassett with his medications (Doc. 37-1, pp. 11-16), and a December 21, 2023 (#K4-1223-2293) grievance regarding the

7

actions of Nurse Reba (Doc. 37-2, pp. 72-73). These grievances focus on non-party individuals and fail to mention either Moldenhauer or Dearmond.

### B. Bassett's Responses and Defendants' Reply Brief

Instead of responding to Defendants' motion, Bassett initially filed a motion for subpoena seeking numerous documents including grievance records (Doc. 43). The Court directed Defendants to file a notice on the status of their initial disclosures, including all relevant grievance materials (Doc. 45). Bassett's deadline to file a response to the motion for summary judgment was extended to February 25, 2025 (*Id.*).

Defendants subsequently filed a notice of compliance (Doc. 46). They indicated that some grievance materials were sent to Bassett as part of their initial disclosures on August 13, 2024. Defendants supplemented that record with additional grievances on October 31, 2024 (*Id.*). They certified that all grievance records were mailed to Bassett.

On February 21, 2025, Bassett filed a response to the summary judgment, entitled as a motion objecting to the summary judgment (Doc. 49). Bassett argued that he failed to receive his grievance logs and emergency grievances (*Id.*). He further argued that he lacked access to his medical and mental health records (*Id.*). He noted that he never received the grievances identified by Defendants nor any of the documents he sought to subpoena from Defendants (*Id.*). On February 24, 2024, Bassett submitted another motion objecting to the summary judgment motion (Doc. 51). This document was nearly identical to his previous filing and argued that he lacked access to any of the relevant grievance records.

In Defendants' reply brief, Defendants argued that they had previously complied with the Court's Order to certify their disclosure of the grievance records (Doc. 50). They also noted that several of the grievances Bassett specifically identified in his responses were addressed in their motion and the records attached to the motion. Bassett identified additional grievances that he claimed to lack access to including K4-1123-1547, K4-0824-3794, and K4-0824-4163. Neither K4-0824-3794 and K4-0824-4163 were part of the grievance records produced to Defendants by the prison.[3] Grievance K4-1123-1547 is in the records, but the grievance complained about issues with the mail room (Doc. 37-2, pp. 44-45). Specifically, Bassett complained that the mail room failed to send out his personal and legal mail and none of his family had received the items sent to him in October 2023 (*Id.* at p. 45). The grievance does not pertain to his medical care (*Id.*).

## LEGAL STANDARDS

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[3] Defendants noted in their motion that they attached all of the grievance files produced to them in their entirety as exhibits to their motion (Doc. 37, p. 2).

9

correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being

>given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Bassett was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

>contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO] within two months after receipt of the written grievance, when reasonably feasible under

11

the circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the [ARB] within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action

12

shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## DISCUSSION

Bassett's response (Docs. 49, 51) fails to address any of the material facts set forth in Defendants' motion. Although Bassett maintained that he lacked access to the grievance records, Defendants certified that the records were sent to him (Doc. 46). Bassett also had access to all of the grievances and records filed with Defendants' motion. Bassett never disputed his receipt of Defendants' motion. Nor does Bassett's response address Defendants' statement of facts. SDIL Local Rule 56.1(b) requires that briefs in opposition to a summary judgment motion contain a response to the statement of facts. "The response shall contain corresponding paragraphs to the Statement of Material Facts that state whether the fact is: (1) admitted; (2) disputed; (3) admitted in part and disputed in part (specifying which part is admitted and which part is disputed); or (4) not supported by the record citation." SDIL Local Rule 56.1(b). Facts that are not specifically disputed are deemed admitted. SDIL Local Rule 56.1(g). Although Bassett is proceeding *pro se*, he made no attempt to even address Defendants' statement of facts. Because Bassett failed to respond to the statement of facts, the Court accepts Defendants' statement of

13

facts as true. *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010) (citing *Cracco v. Vitran Exp. Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

The admission of the material facts, however, does not automatically grant Defendants motion for summary judgment; they must still demonstrate that they are entitled to judgment as a matter of law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Defendants have shown that Bassett failed to fully exhaust his administrative remedies prior to filing his lawsuit. Bassett filed numerous grievances about the medical care that he received from Moldenhauer and Dearmond, but he failed to fully exhaust those grievances. Of the grievances in the record, only one was submitted through each stage of the grievance process. Bassett's September 22, 2023 (#K4-0324-1395) grievance claimed that he was denied his food tray for several days, eventually was examined by Moldenhauer, and sent to an outside hospital due to his condition (Doc. 37-1, pp. 20-21). The grievance was dated September 22, 2023, but was not received by the CAO until March 15, 2024 (*Id*. at p. 20).[4] Although Bassett pursued the grievance through both the grievance office and the ARB, the grievance was rejected because it was submitted outside of the 60-day time period for submitting a grievance. *See* 20 Ill. Admin. Code §504.810(a). When a grievance is rejected on procedural grounds, and not on the merits of the complaint, the grievance remains unexhausted. *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Dole*, 438 F.3d at 808). Here, the ARB refused to examine the merits

---

[4] Bassett noted at the top of his grievance that it was a duplicate of a previously submitted grievance that he claims he submitted 6 months prior to the submission in March 2024 (Doc. 37-1, p. 20).

of Bassett's grievance and, instead, returned the grievance because it was submitted outside of the proper time frame (Doc. 37-1, p. 18). Thus, Bassett failed to fully exhaust his September 22 grievance.

Even if the grievance was properly exhausted, the grievance does not include the claims against Moldenhauer and Dearmond. The grievance does not mention Dearmond and only notes that Moldenhauer sent him to the hospital due to his physical state after being denied several food trays (Doc. 37-1, pp. 20-21). Nothing in the grievance alleges that Dearmond and Moldenhauer failed to treat his numerous conditions. Thus, even if properly exhausted, the grievance does not serve to exhaust his claims against Defendants in this case.

As to the remaining grievances, those grievances do complain about the medical care provided by Dearmond and Moldenhauer. But none of the grievances were fully exhausted. Bassett's August 15, 2023 (#K4-1023-1031), September 12, 2023 (#K4-0923-0321), and January 20, 2024 (#K4-0124-0505) grievances were only submitted to the counselor. Those grievances were returned to Bassett, but there is no evidence in the record to suggest that Bassett submitted the grievances to either the grievance officer or ARB. Nor has Bassett offered any evidence to suggest that he submitted the grievances or was thwarted in his attempts to do so. Bassett did submit his December 14, 2023 (#K4-1223-2205) grievance to the grievance officer, who deemed the grievance resolved as to his issue with his medical hold, but nothing in the record suggests that Bassett submitted

the grievance to the ARB. Thus, none of the grievances serve to exhaust Bassett's claims against Dearmond and Moldenhauer.[5]

Although Bassett failed to address Defendants' arguments regarding his failure to exhaust the identified grievances, Bassett identified three additional grievances that Defendants allegedly failed to provide to him in discovery. There is no evidence of two of the grievances (#K4-0824-4163 and #K4-0824-3794) in the prison's grievance records, nor has Bassett identified the topic of those grievances. The third grievance, #K4-1123-1547, is in the record but is unrelated to the claims in this lawsuit (Doc. 37-2, pp. 44-45). The grievance complained about issues with Bassett's mail. Thus, none of the additional grievances identified by Bassett demonstrate that he exhausted his claims against Moldenhauer and Dearmond. There is simply no evidence in the record showing that Bassett exhausted his grievances or that the grievance process was somehow unavailable to him. The records clearly demonstrate that Bassett was able to file grievances, he simply failed to exhaust the grievances through the entire grievance process.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** (Doc. 36). Bassett's claims are **DISMISSED without prejudice** for his failure to exhaust his administrative remedies. The Clerk of Court is **DIRECTED** to enter

---

[5] None of the grievances regarding Bassett's medical care discuss any alleged retaliation by Dearmond. Although Bassett requested that Dearmond be fired, he never complained that she refused to provide him care because of his grievances.

16

judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 10, 2025.**

*/s/ Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**U.S. District Judge**
